OPINION OF THE COURT
John R. La Cava, J.
On September 18, 1987, a hearing was held in order to determine whether Thomas and Laurie Elwell, respondents prime tenants in the above summary holdover proceeding, breached the stipulation of settlement which provided, inter alia, that a named subtenant was to vacate possession of the apartment and that the Elwells were to return to occupancy.
The court makes the following findings of fact and conclusions of law:
The instant holdover proceeding was commenced by service upon respondents of a 30-day notice (together with notice to cure) alleging breach of a substantial obligation of the lease. The basis for the notice was an illegal subletting of the apartment.
The matter was resolved after several months by the execution of a stipulation of settlement by the parties. The stipulation provided that a named subtenant, Theresa Kim Brogan, was to vacate the apartment within 30 days of the execution of the agreement. In addition, the Elwells who were named as prime tenants were given the right and entitlement to return to the apartment by the landlord and in turn agreed to actually resume occupancy of the apartment.
The stipulation was signed by the Elwells on November 23, 1986 and by Elliott Pritch, the president of Farchester Gardens (the petitioner), on December 3, 1986. It is uncontested by the parties that the subtenant, Brogan, vacated the apartment in late November 1986.
Thereafter, on December 24, 1986, some three weeks after the execution of the stipulation, the Elwells, together with a proposed sublessee, Mr. Frank Rubino, executed a letter requesting permission to sublet the apartment.
On or about January 7, 1987, the petitioner submitted a final order and warrant of eviction to the Yonkers City Court, *564 together with an affirmation by Stephen J. Lehrman, Esq., wherein he indicated the following:
"Paragraph 2 and 6 of the Stipulation of Settlement also requires that upon vacation of the sub-tenant that tenants shall return and re-occupy the premises.
"To date, tenants have not re-occupied the premises pursuant to the stipulation herein.
"Furthermore, on December 24, 1986, tenants forwarded a request to landlord requesting permission to sublet the premises.
"It is apparent that tenant entered into said stipulation fraudulently and had no intention of re-occupying same.
"In view of the obvious default and bad faith of tenants, landlord requests that the annexed Final Order and Warrant of Eviction be signed”.
The final order and warrant together with affirmation were sent by regular mail to the Elwells’ attorney, John H. Rubin, Esq., according to an affidavit of service sworn to by Elaine Abraham, an employee of attorney Stephen Lehrman.
In an affidavit dated July 2, 1987, Mr. Thomas Elwell gave a sworn statement in which he affirmed that he and his wife moved into the apartment on or about December 1, 1986 and that they stayed there until the end of January 1987. In support of this assertion, Mr. Elwell in his affidavit cites a Con Edison bill as proof of occupancy.
The issues having been joined by the above events, the court conducted a hearing on September 18, 1987.
The evidence adduced by the witnesses for the petitioner was credible.
Mr. Elliott Pritch, the landlord and managing agent, testified that he visited the building at least once per week and frequently twice per week during the period when the Elwells were allegedly reoccupying the apartment. Mr. Pritch looked through the windows and saw no furniture, lights, activity or other evidence of occupancy. The apartment appeared empty. Mr. Pritch stated that he had instructed the superintendent to closely monitor the apartment so as to verify compliance with the stipulation of settlement.
Mr. Daniel Adamo, the superintendent, testified that he knew the Elwells personally and that he had been instructed by the owner to closely observe the apartment. During the period between December 1, 1986 and January 30, 1987, he *565 made his rounds passing by the ground-floor apartment everyday. During the day, he saw no activity at the apartment. Garbage was not set out for pick-up. No lights were on at night (the apartment could be seen from the street). During the entire period, he never saw Mrs. Elwell whereas he had seen her 2 or 3 times per week (leaving for work, etc.) when the Elwells had lived at the apartment prior to the Brogan subtenancy. In addition, at the end of November 1986 there was a sewer backup in the building causing flooding and water backup in the ground level apartments. On November 30, 1986, he entered the Elwell apartment (the only vacant apartment) with a sewer serviceman to assist him, and a toilet was removed and the sewer line snaked. There was no furniture in the vacant apartment. The condition of the apartment was the same when Mr. Adamo returned to replaster the wall which was ripped up and inspect the apartment on December 1st, 3rd, and 5th. About three weeks to a month later Mr. Rubino moved into the vacant Elwell apartment according to Mr. Adamo.
Mr. Alfred Campbell, a customer service representative for Con Edison, testified as to the significance of the Con Edison bill cited earlier. The bill, covering the period from December 17, 1986 to January 23, 1987, showed no electrical use and gas usage consistent with the burning of a stove pilot light. Mr. Campbell’s expert opinion was that the apartment had not been occupied during the period in question based upon the nonuse of the utilities.
The posture of the respondents’ case changed drastically when Thomas Elwell took the witness stand. The position throughout the proceedings had been that the Elwells had moved back into the apartment on December 1, 1986 and that they had stayed there until the end of January 1987 as witnessed by the Con Edison bill. At the hearing, Mr. Elwell changed his prior sworn statement to indicate that he had moved back either on December 6th or 7th or on December 12th or 13th. He further amplified his July 2nd affidavit to indicate that his family was actually out of State, in Massachusetts, visiting his sick mother-in-law. Mr. Elwell testified that he is a college teacher and that school was out of session from approximately December 20, 1986 until well into January 1987 (presumably beyond Jan. 23, 1987). To explain the December 24th Rubino sublet request letter, Mr. Elwell testified that he drove down from Massachusetts where he left his *566 family, signed the letter at his attorney’s office, and returned on Christmas Eve to spend the holiday with his family.
On cross-examination, Mr. Elwell was unable to explain how his wife’s signature appeared on the December 24th letter which was executed at his attorney’s office in New Rochelle when she and the family were supposed to be in Massachusetts, according to his prior testimony, visiting his ailing mother-in-law.
From an examination of the above, it is apparent that Mr. Elwell’s testimony at the hearing is not credible. It is not consistent with his prior sworn statement. It further appears to have been tailored to rebut the convincing evidence which was adduced through the testimony of Mr. Adamo and Mr. Campbell. For example, instead of moving in on December 1st, we now find out that the Elwells moved in on December 6th, 7th, 12th or 13th, after Mr. Adamo’s last visit to the apartment on December 5th. Again, instead of residing in the apartment during the entire period, we now find out that the Elwells were actually out of State during the period covered by the Con Edison bill.
Moreover, there are at least two inexplicable flaws in Mr. Elwell’s version of the events. The first was that his wife had to be in New York on December 24th to sign the letter, as shown above. The second is that, by his own admission, the school recess didn’t begin until December 20, 1987. Therefore, Mr. Elwell had to have resided in New York at least until December 20th before he supposedly went to Massachusetts. If he were in fact residing in apartment 2-b, the Con Edison bill would have shown electrical and/or gas usage consistent with 3 or 4 days’ use. Instead, the bill showed zero electrical usage.
The court concludes that Mr. Elwell’s testimony is not credible. The court further finds and concludes that based upon the documentary evidence and testimony, adduced through the petitioner’s witnesses, that the Elwells failed to resume residency in apartment 2-b following the execution of the stipulation of settlement. The failure to reoccupy the apartment constituted a breach of the stipulation.
The further issue which must be considered in this case may be summarized as follows: Where after the signing of a stipulation of settlement in which the primary tenants have agreed, inter alia, to reoccupy the apartment, and where instead of reoccupying the primary tenants have instead served notice upon the landlord of their intent to sublet *567 pursuant to Real Property Law § 226-b, does the filing with the court upon notice thereafter of a judgment and warrant of eviction based upon a breach of the stipulation for failure to reoccupy the apartment constitute proper notice of the landlord’s nonconsent to the section 226-b demand?
From the foregoing, it is apparent to the court that the Elwells never intended to honor the stipulation and move back into apartment 2-b. Mr. Elwell testified at the hearing that he and his wife were residing in another apartment in Bronxville. They have apparently resided there since the early fall of 1986 when Theresa Brogan first began to sublet the apartment. Mr. Elwell had to maintain a local residence because of his employment at a local college and despite his claim of hardship (to wit, the family illness requiring periodic visits to Massachusetts) which was offered as the basis for his section 226-b letter requesting permission to sublet.
After the stipulation was signed, the Elwells attempted to reapply for permission to sublet the apartment, despite the prior litigation, and despite the landlord’s stated intention, via the holdover proceeding, to deny permission and to force them to reoccupy the apartment. This was perhaps presumptuous on their part, but certainly not illegal or otherwise prohibited. If a landlord doesn’t waive his right to object to a subsequent unauthorized subtenancy where he has previously consented to one (see, 301 E. 69th St. Corp. v Vasser, 118 Misc 2d 896 [1982]) then it logically follows that a prime tenant who has been denied permission does not waive his right to reapply and ask the landlord to reconsider his prior refusal.
In this case, the respondents argue that petitioner never answered the December 24th letter/request to sublet. In support of this position, there is annexed to the May 29th notice of motion and affirmation by John H. Rubin, Esq., respondents’ former attorney, in which he states that he did not receive any notices or letters from petitioner between December 4, 1986 and March 6, 1987. The allegation is therefore raised that petitioner surreptitiously submitted a judgment and warrant of eviction to the Yonkers City Court on or about January 7, 1987 without notice to the respondents or their attorney and that the affidavit of service by Elaine Abraham was a "total and complete fabrication”.
In rebuttal, petitioner attached a copy of a denial letter allegedly sent to Mr. and Mrs. Thomas Elwell on January 7, 1987. This letter, however, was never made part of the prior *568 pleadings nor was it entered into evidence at the hearing. Accordingly, the court will not allow it to be considered at this time.
The petitioner further argues that when the landlord received the request to sublet to Frank Rubino dated December 24, 1986, the landlord and superintendent had personal knowledge that the Elwells had not reoccupied the apartment. All necessary papers, including a judgment, warrant of eviction, and affirmation by Stephen J. Lehrman in which he specifically alleged that the Elwells had not reoccupied the premises pursuant to the stipulation and that they had forwarded a request for permission to sublet were submitted on January 7, 1987 to the court on notice to the Elwells’ then attorney, John H. Rubin, Esq. The tenants’ then attorney was therefore on notice that the landlord not only was not consenting to the December 24th request to sublet but rather was also seeking the prime tenants’ immediate eviction which would make a sublease impossible. The submission of the judgment and warrant to John H. Rubin, Esq., was clear notice within the 30 days required by Real Property Law § 226-b that the landlord was denying the tenants’ request to sublet.
The court agrees with the petitioner in this case.
The gravamen of the instant holdover proceeding was the creation of an illegal subtenancy by the respondents. The petitioner never waivered in his objection to this perceived breach of a substantial obligation of the lease. An argument can be made that the Elwells waived their right to sublease when they agreed to reoccupy the apartment and terminate the sublease. This court, however, feels that based upon the holding of 301 E. 69th St. Corp. v Vasser (supra) that the Elwells could ask the landlord to reconsider his objections to the sublease and reapply for permission to sublet pursuant to section 226-b.
The Elaine Abraham affidavit of service attached to the January 7, 1987 papers constituted sufficient proof of service. Production of an affidavit of service by mail gives rise to a presumption of proper mailing pursuant to CPLR 2103 (b) (2) (see, Vita v Heller, 97 AD2d 464 [2d Dept 1983]). In response to this presumption of proper service only a general denial in the form of an affirmation of nonreceipt by the former attorney was proffered. No further evidence on this issue was offered by *569 the respondents at the September 18th hearing. The test is not whether the papers were actually received but whether they were properly mailed. The court therefore finds insufficient evidence to rebut the presumption of proper mailing which arose by submission of the affidavit of service.
While section 226-b requires that a landlord send a notice of his consent or nonconsent (and the reasons therefore) within 30 days of the request to sublet, the statute does not elaborate on the type or form of notice which the landlord is required to send. Ordinarily, a letter consenting to or denying the request would be an appropriate response. However, the court sees no legal impediment to the unorthodox approach which was taken by the petitioner in this case in view of the continuing litigation and the perceived breach of the stipulation of settlement. The submission of the judgment, warrant, and affirmation on January 7th gave sufficient notice of the landlord’s denial of the petitioner’s reapplication to sublet.
Finally, the failure to join the new subtenant, Frank Rubino, as a party to the action is not fatal as alleged by the respondents. When a paramount landlord brings a summary proceeding to evict his tenant, if he wishes to obtain complete possession of the leased premises, he must make all the subtenants parties to the proceeding. If he fails to join a subtenant, then he will not be able to evict such subtenant pursuant to the warrant he may obtain in the proceeding directing the removal of the paramount tenant. In other words, whatever the effect of the summary proceeding may have on the sublease, the subtenant’s rights to possession, at least, will not be affected by the issuance of a warrant in a summary proceeding in which such subtenant was not made a party (1 Rasch, New York Landlord & Tenant — Summary Proceedings § 239, at 305 [2d ed]). Thus, it has been held that undertenants are proper parties to a summary proceeding, but they are not necessary parties (Atterbury v Edwa, 61 Misc 234). The subtenant, Rubino, is entitled to temporary possession.
The petitioner’s request for a judgment, final order and warrant of eviction based upon a breach of the stipulation of settlement by respondents and compliance by petitioner in all respects with section 226-b of the Real Property Law is in all respects granted.